1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| BRAYON TERRELL NANCE, III, | Case No. CV 13-6544 JC |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

18  **I.      SUMMARY**

19          On September 13, 2013, plaintiff Brayon Terrell Nance, III ("plaintiff")

20  filed a Complaint seeking review of the Commissioner of Social Security's

21  termination of plaintiff's benefits.  The parties have consented to proceed before

22  the undersigned United States Magistrate Judge.

23          This matter is before the Court on the parties' cross motions for summary

24  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

25  Court has taken both motions under submission without oral argument.  See Fed.

26  R. Civ. P. 78; L.R. 7-15; September 17, 2013 Case Management Order ¶ 5.

27  ///

28  ///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On March 2, 2006, plaintiff was granted childhood Supplemental Security

7    Income ("SSI") benefits effective September 1, 2005 due to a medically

8    determinable impairment of oppositional defiant disorder which met Listing

9    112.08 ("Personality Disorders").  (Administrative Record ("AR") 8, 52, 65).

10   When plaintiff turned 18, the Social Security Administration redetermined

11   plaintiff's eligibility for benefits as required by Social Security regulations.  (AR

12   8, 52).  On September 24, 2010, plaintiff was notified that his benefits were being

13   terminated effective September 1, 2010, due to insufficient evidence –

14   specifically, plaintiff failed to submit medical evidence supporting his claimed

15   disability and failed to attend a scheduled consultative examination.  (AR 8, 52,

16   54-55).

17   On December 28, 2010, plaintiff attended a consultative psychological

18   evaluation.  (AR 187-92).  A state agency disability hearing officer considered the

19   findings noted in the consultative evaluation, held a hearing (which plaintiff did

20   not attend), and on September 7, 2011, upheld the termination of plaintiff's

21   benefits.  (AR 8, 63-73).  On September 19, 2011, plaintiff requested a hearing

22   before an Administrative Law Judge.  (AR 74).

23   At a hearing on January 27, 2012, plaintiff stated that he wished to have a

24   representative, and the Administrative Law Judge ("ALJ") continued the hearing

25   for ninety (90) days to give plaintiff an opportunity to obtain representation.  (AR

26   44-50).

27   On May 25, 2012, the ALJ examined the medical record and heard

28   testimony from plaintiff (who was <u>not</u> represented by counsel) and a vocational

expert.  (AR 20-43).  On June 5, 2012, the ALJ determined that plaintiff's disability ended on September 1, 2010, and that plaintiff had not become disabled through the date of the decision.  (AR 8-14).  Specifically, the ALJ found that beginning on September 1, 2010:  (1) plaintiff suffered from the following severe impairment:  a personality disorder with antisocial features (AR 10); (2) plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 10); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was limited to simple repetitive tasks (AR 11); (4) plaintiff had no past relevant work (AR 12); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically industrial cleaner and assembler (AR 13); and (6) plaintiff's allegations of psychotic symptoms were unsupported in the record and entitled to no evidentiary weight given plaintiff's history of malingering (AR 12).

The Appeals Council denied plaintiff's application for review.  (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Childhood Supplemental Security Income Benefits

A child (*i.e.*, an individual under the age of 18) qualifies for SSI benefits essentially if he is not engaging in substantial gainful activity and has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. § 416.906.  When the child beneficiary turns 18, the Commissioner makes a redetermination of the beneficiary's continuing eligibility under the five-step sequential evaluation process for evaluating new SSI benefit claims by adults.  See 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987(b) (when redetermining eligibility of ///

SSI child beneficiary who reaches age 18, Commissioner uses "the rules for adults (individuals age 18 or older) who file new applications [for SSI benefits]").

### B.   Sequential Evaluation Process for Adult Disability Claimants

To qualify for disability benefits, an adult claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

///

4

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow the claimant to adjust to other work that
        exists in significant numbers in the national economy?  If so,
        the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

## C.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must
"'consider the record as a whole, weighing both evidence that supports and
evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

1  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
2  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

3  **IV.   DISCUSSION**

4         Plaintiff contends that a reversal or remand is appropriate because the ALJ
5  failed adequately to develop the record of plaintiff's mental impairments.
6  (Plaintiff's Motion at 2-9).  While the Court recognizes that the ALJ and the
7  Administration did make efforts to develop the record (*e.g.*, requesting records
8  from the sole treating source identified by plaintiff in his original application,
9  ordering a consultative examination) and that those efforts were at least to some
10 degree frustrated by plaintiff's own conduct (*e.g.*, his initial provision of incorrect
11 contact information for the foregoing treating source, his initial failures to appear
12 for a scheduled consultative examination), the Court nonetheless concludes, for
13 the reasons explained below, that the ALJ did not adequately develop the record
14 and that a remand is warranted for the ALJ to do so and to reevaluate this case
15 after doing so.

16        **A.    Pertinent Law**

17        Although each claimant bears the burden of proving disability, an ALJ has
18 an affirmative duty "to fully and fairly develop the record and to assure that the
19 claimant's interests are considered."  Smolen v. Chater, 80 F.3d 1273, 1288 (9th
20 Cir. 1996) (citation omitted); see also McLeod v. Astrue, 640 F.3d 881, 885 (9th
21 Cir. 2011) ("The ALJ has a duty to conduct a full and fair hearing.") (citing id.).
22 An ALJ must be "especially diligent" where, like here, a claimant has no
23 representation at all.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)
24 (citation omitted); Vidal v. Harris, 637 F.2d 710, 711 (9th Cir. 1981) (where a
25 claimant "is not represented by counsel" ALJ has "very heavy burden" to
26 "scrupulously and conscientiously probe into, inquire of, and explore for all
27 relevant facts . . . .") (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978))
28 (internal quotation marks omitted).  An ALJ's duty to develop the record is even

                                          6

1   greater where the *pro se* claimant may have a mental impairment.  Tonapetyan,
2   242 F.3d at 1150; see also Thompson v. Sullivan, 933 F.2d 581, 586 (7th Cir.
3   1991) ("[W]hen a claimant is both unrepresented *and* suffers from a mental
4   impairment . . . the ALJ's duty to carefully develop the record is even greater.")
5   (citation omitted, emphasis in original).

6          An ALJ's duty to develop the record further is triggered only "when there is
7   ambiguous evidence or when the record is inadequate to allow for proper
8   evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.
9   2001).  An ALJ does not fail in his duty to develop the record by not seeking
10  evidence or ordering further examination or consultation regarding a physical or
11  mental impairment if no medical evidence indicates that such an impairment
12  exists.  See Breen v. Callahan, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998)
13  (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is
14  triggered by "the presence of some objective evidence in the record suggesting the
15  existence of a condition which could have a material impact on the disability
16  decision") (citing Smolen, 80 F.3d at 1288; Wainwright v. Secretary of Health and
17  Human Services, 939 F.2d 680, 682 (9th Cir. 1991)).

18         Although a claimant has the right to be represented at the administrative
19  hearing, the "[l]ack of counsel does not affect the validity of the hearing unless the
20  [claimant] can demonstrate prejudice or unfairness in the administrative
21  proceedings." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (citing Vidal,
22  637 F.2d at 713).  A case must be remanded, however, where the ALJ's failure to
23  meet the "heavy burden" fully and fairly to develop the record "may have []
24  prejudiced" the claimant.  Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir.
25  1992) (citations omitted); see, e.g., Vidal, 637 F.2d at 714-15 (remanding case
26  where unrepresented, mentally disabled claimant was "totally incapable of
27  challenging the vocational expert's conclusions").
28  ///

1

**B.    Pertinent Facts**

2          On or about January 19, 2010, plaintiff completed an initial Disability
3   Report which called upon him to list and supply contact information for each
4   treating source who had information about his condition.  (AR 122-31).  Plaintiff
5   identified a single treating source – Shadi Ravori – and supplied contact
6   information for such source.  (AR 125).  On June 14, 2010, the Administration
7   noted that the contact information for such treating source was incorrect and
8   attempted to obtain correct information from plaintiff, but was initially unable to
9   reach plaintiff because the contact information he had supplied for himself was
10  also incorrect.  (AR 185).  On June 17, 2010, presumably after learning from
11  plaintiff that Shadi Ravori was affiliated with "Family and New Directions" and
12  obtaining contact information for such entity, the Administration sent a written
13  request for plaintiff's medical records to such entity.  (AR 184).  On June 29,
14  2010, the Administration followed up with a telephone call and sent such entity a
15  second request.  (AR 184).  As of the date the ALJ issued his decision – June 5,
16  2012 – such entity had not provided any records.  (AR 11).

17          In Psychiatric Review Technique and Case Analysis forms dated September
18  16, 2010, a non-examining, state agency physician essentially concluded that there
19  was "insufficient evidence" to evaluate plaintiff's mental abilities.  (AR 168-80).

20          Between June 14, 2010 and December 2010, the Administration scheduled
21  plaintiff for a consultative examination on three occasions.  (AR 183-85, 187-92,
22  196, 209).  The Administration contemporaneously notified and reminded plaintiff
23  of such appointments, albeit with some difficulty and sometimes with the
24  assistance of third parties, but plaintiff nonetheless apparently failed to appear at
25  two such appointments.  (AR 181-85, 209).  He finally appeared in December
26  2010 for the third scheduled appointment as detailed below.

27          On December 28, 2010, Dr. Ahmad R. Riahinejad, a consultative state
28  agency psychologist, performed a complete psychological evaluation of plaintiff,

8

which included a mental status evaluation and objective psychological testing.[1]
(AR 187-92).  Based on his examination of plaintiff and the results of the
objective testing, Dr. Riahinejad opined, in pertinent part, that (1) plaintiff "did
not put his best effort into the testing"; (2) plaintiff was "functioning in an
undetermined range of intellectual ability"; (3) plaintiff's "[p]robable []
diagnoses" included "Rule Out Psychotic Disorder, Not Otherwise Specified" and
"Rule Out Mental Retardation, Mild" (which was "provisional pending review of
[plaintiff's] records prior to the age of 18"); (4) due to plaintiff's malingering
during testing "it [was] difficult to comment on [plaintiff's] work-related ability"
except to say that plaintiff "was not capable of managing funds on [his own]
behalf," and "had difficulty understanding, remembering and carrying out simple
and repetitive types of instructions which appeared to be volitional"; and (5) "[i]t
would be [in plaintiff's] best interest to continue to receive intervention until he
graduate[d] [12th grade]."  (AR 191-92).

       In a January 5, 2011 Psychiatric Review Technique form, a non-examining,
state agency psychiatrist concluded – apparently based solely on Dr. Riahinejad's
psychological evaluation of plaintiff – that plaintiff had no medically determinable
mental impairment.  (AR 197-207).

       On September 23, 2011, plaintiff's treating physician, Dr. Steven A. Feig,
apparently examined petitioner at a "check-up" and petitioner so advised the
Administration.  (AR 145).  The record does not reflect that the Administration
requested Dr. Feig's records.   (AR 145).

       At the May 25, 2012 administrative hearing, the ALJ asked plaintiff if he
had "any other evidence with [him] for [the ALJ's] consideration."  (AR 27).
Plaintiff responded "not *right now*" but said he had an appointment to see the

_____

       [1]Dr. Riahinejad administered the following tests:  Bender Visual-Motor Gestalt Test-II;
Trailmaking Test, Parts A and B; Wechsler Adult Intelligence-IV; and Wechsler Memory Scale-
IV.  (AR 187).

doctors on the 28th of the following month at a clinic, possibly called "Crenshaw." (AR 27) (emphasis added). Plaintiff also testified that he had sought treatment for his mental condition at such clinic, probably within the prior year, and that his grandmother would take him there. (AR 27, 34). Although the ALJ asked plaintiff for further identifying information for the clinic, plaintiff indicated he did not know such information. (AR 27). At the end of the hearing, the ALJ asked "[i]s there anything else that you want to tell me that you may have remembered while we were talking to the [vocational] expert?" (AR 42). Plaintiff answered "no." (AR 42).

### C. Analysis

As the ALJ found, there is evidence which suggests that plaintiff suffers from a severe mental impairment. For example, the record currently reflects that (1) plaintiff received SSI benefits as a child based on a mental impairment which met Listing 112.08(A)(2), (A)(4)-(6) & (B)(1)-(3)[2] (AR 8, 52, 65); see 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.08 (Personality disorders: "Manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness."); (2) plaintiff testified at the hearing that he heard voices (which his mother said was schizophrenia), would become angry and might need to walk away to calm down, did not like to be around people, and had seen a doctor for his mental

---

[2]To be found presumptively disabled based on Listing 112.08(A)(2), (A)(4)-(6) & (B)(1)-(3), plaintiff needed to present evidence of (1) "Deeply ingrained, maladaptive patterns of behavior, associated with [¶] [] Seclusiveness or autistic thinking; or [¶] [] Pathologically inappropriate suspiciousness or hostility; or [¶] . . . [¶] [] Persistent disturbances of mood or affect; or [¶] [] Pathological dependence, passivity, or aggressiveness; or [¶] [] Intense and unstable interpersonal relationships and impulsive and exploitative behavior"; which resulted in (2) marked impairment in age-appropriate cognitive/communicative, social, or personal functioning (documented by appropriate medical findings and, as necessary, the results of standardized psychological tests), and/or marked difficulties in maintaining concentration, persistence, or pace. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.08(A)(2), (A)(4)-(6); § 112.08(B) (incorporating § 112.02(b)(2)).

10

1    condition at some point, possibly within the last year (AR 30-31, 34, 36-38);
2    (3) Dr. Riahinejad noted that plaintiff was "a below average student in special
3    education" (AR 188); and (4) disability reports noted that plaintiff had received
4    counseling for "anger" as recently as January 2010 (AR 125, 151).
5        Despite the foregoing evidence that plaintiff suffers from a severe mental
6    impairment, the record following such consultative evaluation, remained
7    inadequate to allow for proper evaluation of plaintiff's mental abilities.  As the
8    ALJ noted, there is "[no] treating source evidence" in the record.  (AR12; see AR
9    168-217).  Moreover, the only objective clinical findings in the record regarding
10   plaintiff's mental condition – i.e., the opinions expressed in Dr. Riahinejad's
11   psychological evaluation of plaintiff – were mostly inconclusive.  For example,
12   Dr. Riahinejad stated that he was unable to determine the range of plaintiff's
13   intellectual functioning.  (AR 191).  As the ALJ noted, Dr. Riahinejad also said he
14   could not reach an appropriate Axis I diagnosis ("Rule Out Psychotic Disorder,
15   Not Otherwise Specified") due to plaintiff's malingering during testing.  (AR 12)
16   (citing Exhibit 4F at 5 [AR 191]).  Similarly, Dr. Riahinejad provided only a
17   "provisional" Axis II diagnosis ("Rule Out Mental Retardation, Mild") until he
18   could "review [plaintiff's] records prior to the age of 18."  (AR 191).  Dr.
19   Riahinejad said it was "difficult [for him] to comment on [plaintiff's] work-related
20   abilit[ies]" given plaintiff's failure to use his "best effort" during psychological
21   testing.  (AR 192).  Dr. Riahinejad opined that plaintiff "had difficulty
22   understanding, remembering and carrying out simple and repetitive types of
23   instructions," but that such limitations appeared to be "volitional."  (AR 192).
24   Ultimately, the only opinions Dr. Riahinejad expressed with any certainty were
25   that (a) plaintiff "was not capable of managing funds on [his own] behalf"; and
26   (b) "[i]t would be [in plaintiff's] best interest to continue to receive intervention."
27   (AR 192).
28   ///

1    In light of the Administration's prior disability determination, the foregoing
2    ambiguous and inconclusive evidence triggered the ALJ's duty further to develop
3    the record regarding plaintiff's mental impairments.  See Hilliard v. Barnhart, 442
4    F. Supp. 2d 813, 817 (N.D. Cal. 2006) (A claimant "need only 'raise a suspicion'
5    about his [mental] impairment in order to trigger the ALJ's duty to develop the
6    record.") (quoting Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987)); see also
7    Harris v. Barnhart, 219 F. Supp. 2d 966, 974-75 (E.D. Wis. 2002) (finding ALJ
8    failed in duty to develop the record where claimant had previously been found
9    disabled based on a personality disorder and testified about depression at his
10   administrative hearing, where the ALJ took no steps to develop the record to
11   determine how the claimant's alleged depression and/or personality disorder
12   currently impacted his residual functional capacity).

13   While this Court, as noted above, recognizes that the Administration and the
14   ALJ made significant efforts to develop the record and that the absence of medical
15   evidence is to some degree attributable to plaintiff himself, it nonetheless
16   concludes on this record that more was reasonably required to satisfy the ALJ's
17   heavy burden to fully and fairly develop the record in this case.  More specifically:
18   (1) the record does not reflect that the Administration/the ALJ made any efforts to
19   obtain Dr. Feig's medical records; and (2) the record does not reflect that the
20   Administration/the ALJ made adequate efforts to develop the record relative to
21   plaintiff's visits to the mental health clinic referenced at the administrative
22   hearing.  As noted above, although plaintiff advised the Administration regarding
23   his appointment with Dr. Feig in September 2011, and indicated at the
24   administrative hearing that he did not *then* have any other evidence with him for
25   the ALJ's consideration, but that he did have an appointment the following month
26   at a clinic to which his grandmother usually transported him, the record does not
27   reflect that the ALJ made any efforts to obtain Dr. Feig's records or to include
28   records from the clinic plaintiff was to visit (*e.g*, by holding the record open so

1    plaintiff could provide the ALJ with such treatment records when they became
2    available or following up with plaintiff's grandmother – from whom the
3    Administration had previously sought and successfully obtained pertinent
4    information (AR 149-62, 183) – regarding the name and address of the clinic).
5         In light of the foregoing omissions by the Administration/the ALJ,
6    plaintiff's *pro se* status, his relative youth, and the nature of the asserted mental
7    impairment in issue which potentially contributed to his failure effectively to
8    present his case and/or to cooperate with the psychological testing which was
9    administered, a remand is appropriate to (1) enable the ALJ/the Administration to
10   request the missing records and/or to afford plaintiff the opportunity to supplement
11   the record with such records; and (2) enable the ALJ to reevaluate this case after
12   doing so. See, e.g., Higbee, 975 F.2d at 562 ("The duty to provide an adequate
13   record is of extraordinary importance when a person once found eligible for S.S.I.
14   benefits may be in danger of losing them because he is too ill to act in his own best
15   interests."; "[I]t would be contrary to the purpose of the S.S.I. program to affirm
16   the Secretary's decision as based on [the claimant's] failure to cooperate, when the
17   record suggests the failure may be due to the very mental illness that rendered [the
18   claimant] eligible for benefits.").
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

1  **V.    CONCLUSION**[3]

2         For the foregoing reasons, the decision of the Commissioner of Social

3  Security is reversed in part, and this matter is remanded for further administrative

4  action consistent with this Opinion.[4]

5         LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:   April 30, 2014

7

8  _____
                                    /s/

   Honorable Jacqueline Chooljian

9  UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22  _____

23         [3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
   decision, except insofar as to determine that a reversal and remand for immediate payment of
24  benefits would not be appropriate.

25         [4]When a court reverses an administrative determination, "the proper course, except in rare
   circumstances, is to remand to the agency for additional investigation or explanation."
26  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
   quotations omitted).  Remand is proper where, as here, additional administrative proceedings
27  could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
   1989).
28